**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Application of | ) |
| | ) |
| COMMITTEE ON FINANCE | ) Misc. No: 07-0134 (TFH) |
| WASHINGTON, D.C. 20510 | ) |
| | ) |
| For a Writ of Habeas Corpus | ) |
| Ad Testificandum. | ) |
| | ) |

## EMERGENCY MOTION TO QUASH

The Federal Bureau of Prisons, through undersigned counsel, respectfully files this

motion to quash the Writ of Habeas Corpus As Testificandum issued by this Court on April 4,

2007.

## BACKGROUND

From the process received by undersigned counsel, it appears that on an unknown date,

Kolan Davis, Republican Chief Counsel for the Senate Committee on Finance, and William

Wynne, Tax Counsel for the Senate Committee on Finance, submitted to this Court an

Application for Writ of Habeas Corpus Ad Testificandum. See Exhibit 1 (Application for Writ

of Habeas Corpus Ad Testificandum). This Application requested that the Court issue a Writ

requiring the Honorable John Clark, Director, United States Marshals Service, and Adam M.

Torres, United States Marshal for the Central District of California, produce Evangelos Dimitrios

Soukas before the Committee on Finance on April 11, 2007 and April 12, 2007. See Ex. 1 p.2.

On April 4, 2007, this Court issued a Writ of Habeas Corpus As Testificandum.

See Exhibit 2 (Apr. 4, 2007 Writ of Habeas Corpus As Testificandum). As requested by Messrs.

Davis and Wynne, this Writ ordered Messrs. Clark and Torres to produce Soukas for

interrogation by the Committee on Finance until such Committee no longer requires his presence. See Ex. 2.

Inmate Soukas has been committed to the custody of the Federal Bureau of Prisons to serve a term of imprisonment. See Declaration of John M. Vanyur ("Vanyur Decl.") (attached as Exhibit 3). Mr. Soukas is currently housed at the Federal Transfer Center, Oklahoma City (FTC) a facility owned and operated by the Federal Bureau of Prisons. Vanyur Decl. Mr. Soukas was transported to FTC Oklahoma from his designated facility, the Federal Correctional Institution (FCI) Victorville, California, by the United States Marshals Service. Vanyur Decl.

Inmate Soukas is currently serving a sentence of more than 8 years and is classified as medium security due to the nature of the offense (involved a loss of more than $1 million) and a criminal history that includes serious offenses. Vanyur Decl. As explained in the Vanyur Declaration, the Bureau of Prisons believes that allowing inmate Soukas to testify will create security concerns at the institution to which Soukas will return (FCI Victorville). Vanyur Decl. The concern of the BOP is based on one of the fundamental principles in managing safe and secure correctional institutions: to the greatest extent possible, inmates should have a similar status; none should be allowed to have elevated status over the others. Vanyur Decl. This is because with elevated status comes a sense of power for the inmate. Vanyur Decl. This power allows the inmate to take advantage of, direct and/or manipulate other inmates, thereby creating a dangerous environment for staff and inmates. Vanyur Decl. Additionally, after a time other inmates begin to resent the inmate with the elevated status and he or she becomes a target, creating another dangerous situation for staff and inmates. Vanyur Decl.

2

The concern described above has been critical to many of the decisions made over the past few years by the Bureau of Prisons to deny requests to interview inmates on national television. Vanyur Decl. While each interview request is considered by the warden of the facility where the inmate is housed, and may be denied based on specific security concerns present in that case, very often the concerns relate to the inmate gaining elevated status as a result of appearing on television. Vanyur Decl. In fact, in some instances the concerns relate more directly to the inmate describing behaviors that other inmates would find offensive and would make the interviewee a target among the inmate population. Vanyur Decl. Thus, based upon the foregoing, the Bureau of Prisons has concerns about permitting Soukas to testify before the Committee on Finance under the current writ.

Moreover, BOP is also concerned about allowing Soukas to appear on national television, testifying before a Senate committee alongside high level government officials poses safety and security concerns for the BOP. Vanyur Decl.

**ARGUMENT**

**I.    THE MARSHALS SERVICE DOES NOT HAVE CUSTODY OF SOUKAS**

It is well accepted that a Court issuing a writ of habeas corpus must do so to the person with custody of the inmate. <u>Braden v. 30th Judicial Cir. Ct. of Ky.</u>, 410 U.S. 484, 494 (1973) ("A writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in . . . custody."). Inmate Soukas has been committed to the custody of the Federal Bureau of Prisons to serve a term of imprisonment. Presently Mr. Soukas is housed at the Federal Transfer Center, Oklahoma City (FTC) a facility owned and operated by the Federal Bureau of Prisons. Mr. Soukas transported to FTC Oklahoma from his designated facility, the

3

Federal Correctional Institution (FCI) Victorville, California by the United States Marshals Service. Because the writ was issued to the Marshals Service, not the person with custody over the inmate (BOP Warden), it is ineffective as a matter of law.

## II.    A WRIT OF HABEAS CORPUS AD TESTIFICANDUM IS UNAVAILABLE TO COMPEL TESTIMONY BEFORE CONGRESS

Federal Courts are courts of limited jurisdiction.  A writ of habeas corpus ad testificandum is used to secure the presence of a prisoner for testimony in court.  The specific authority for a Court to issue a writ of habeas corpus as testificandum arises from 28 U.S.C. § 2241(c), which states, "The writ of habeas corpus shall not extend to a prisoner unless . . . (c) it is necessary to bring him *into court* to testify or for trial."  28 U.S.C. § 2241 (emphasis added). Pursuant to the plain language of this statute, this Court should quash the writ at issue because the issuance of the writ is not authorized by statute – the statute authorizing the writ states that such writs may be issued when necessary to bring the prison "into court," not before Congress. Bell Atlantic Tel. Cos v. FCC, 131 F.3d 1044, 1047 (D.C. Cir. 1997) ("The first traditional tool of statutory construction focuses on the language of the statute." citing Bailey v. United States, 516 U.S. 137 (1995)).

Counsel for the Senate Committee on Finance applied for the writ at issue in this action to compel interrogation by, and testimony before, the Committee on Finance.  The application does not state the legal authority upon which the application is based.  There can be no dispute that the application did not request that Soukas be brought before a Court – the Committee on Finance is *not* a Court.  Similar to the application for the writ, the writ issued by this Court on

4

April 4 commanded that Soukas be brought before the Committee on Finance for purposes of interrogation and testimony, not before a Court.

Accordingly, the writ at issue is beyond the authority of this Court, as this Court is authorized to issue writs to compel an inmate to testify before a court, not before a Congressional Committee.

Although courts may also issue a writ pursuant to the All Writs Act, 28 U.S.C. § 1652, writs issued under that section may be issued only as "necessary or appropriate in aid of [the court's] respective jurisdictions and agreeable to the usages and principles of law." See 28 U.S.C. § 1652(a). The application filed by Messrs. Davis and Wynne is devoid of any explanation as to why the writ at issue is necessary or appropriate to aid in this Court's jurisdiction. See Exhibit 1. In fact, the application filed by Messrs. Davis and Wynne is devoid of any legal support, or even a citation to any legal authority. Thus, the writ at issue is also inappropriate pursuant to 28 U.S.C. § 1652(a) and should be quashed.[1]

---

[1] Although this Court has subject matter jurisdiction to hear a civil action by the Senate or any authorized committee or subcommittee thereof to enforce a subpoena or order of the Senate, committee or subcommittee thereof, see 28 U.S.C. § 1365, that section is inapplicable to this matter. The filing by the Committee on Finance was not a subpoena or order of the Committee, it was, instead, an application for a Writ of Habeas Corpus Ad Testificandum. Thus, 28 U.S.C. § 1365 is inapplicable to this matter and does not provide this Court jurisdiction to issue the writ at issue. This statutory provision is also inapplicable because the provision, on its face, "shall not apply to an action to enforce, to secure a declaratory judgment concerning the validity of, or to prevent a threatened refusal to comply with, any subpena or order issued to an officer or employee of the executive branch of the Federal Government acting within his or her official capacity." Id. § 1363(a).

III.    **THIS COURT ISSUED THE WRIT ON THE BASIS OF A FAULTY APPLICATION**

Pursuant to the Rules of Procedure adopted by the Committee on Finance on January 17, 2007, see Exhibit 3 (also available at: http://www.senate.gov/~finance/rules.pdf), the Committee is authorized to compel testimony by Subpoena only. See Exhibit 3 p.3, Rule 10. Specifically, Rule 10, titled Subpoenas, states

> Witnesses and memoranda, documents, and records may be subpoenaed by the chairman of the committee with the agreement of the ranking minority member or by a majority vote of the committee. Subpoenas for attendance of witnesses and the production of memoranda, documents, and records shall be issued by the chairman, or by any other member of the committee designated by him.

Exhibit 4 (also available at: http://www.senate.gov/~finance/rules.pdf).

The plain language of the Committee on Finance's Rules do *not* permit the Committee or its Staff to request testimony through an application for a writ of habeas corpus ad testificandum.[2] Because the application was filed without proper authority, this Court should quash the April 4, 2007 Writ.

IV.    **THE FACTORS AFFECTING THE PROPRIETY OF THE ISSUANCE OF A WRIT SUGGEST THAT THE WRIT SHOULD BE QUASHED**

On factor that is to be weighed in issuing a writ of habeas corpus ad testificandum is any potential danger or security risks. See In re Larson, 232 B.R. 396 (Bankr. D. Wis. 1999) (citing eight factors). In this matter, permitting Soukas to testify before Congress pursuant to the current writ raises serious security concerns.

---

[2] As set forth previously, the likely reason the Rules are devoid of this authority is that the Statute authorizing the Court to issue such a writ do so for testimony in court, not before Congress.

6

Inmate Soukas is currently serving a sentence of more than 8 years and is classified as medium security due to the nature of the offense (involved a loss of more than $1 million) and a criminal history that includes serious offenses. Vanyur Decl. As explained in the Vanyur Declaration, the Bureau of Prisons believes that allowing inmate Soukas to testify will create security concerns at the institution to which Soukas will return (FCI Victorville). Vanyur Decl. The concern of the BOP is based on one of the fundamental principles in managing safe and secure correctional institutions: to the greatest extent possible, inmates should have a similar status; none should be allowed to have elevated status over the others. Vanyur Decl. This is because with elevated status comes a sense of power for the inmate. Vanyur Decl. This power allows the inmate to take advantage of, direct and/or manipulate other inmates, thereby creating a dangerous environment for staff and inmates. Vanyur Decl. Additionally, after a time other inmates begin to resent the inmate with the elevated status and he or she becomes a target, creating another dangerous situation for staff and inmates. Vanyur Decl.

The concern described above has been critical to many of the decisions made over the past few years by the Bureau of Prisons to deny requests to interview inmates on national television. Vanyur Decl. While each interview request is considered by the warden of the facility where the inmate is housed, and may be denied based on specific security concerns present in that case, very often the concerns relate to the inmate gaining elevated status as a result of appearing on television. Vanyur Decl. In fact, in some instances the concerns relate more directly to the inmate describing behaviors that other inmates would find offensive and would make the interviewee a target among the inmate population. Vanyur Decl. Thus, based upon the

7

foregoing, the Bureau of Prisons has concerns about permitting Soukas to testify before the Committee on Finance under the current writ.

Moreover, BOP is also concerned about allowing Soukas to appear on national television, testifying before a Senate committee alongside high level government officials poses safety and security concerns for the BOP.  Vanyur Decl.

Based upon the real and likely security concerns in permitting Soukas to testify pursuant to the current writ, this Court should quash the writ.

## CONCLUSION

For the reasons set forth herein, the Bureau of Prisons respectfully requests that this Court quash its April 4, 2007 Writ of Habeas Corpus Ad Testificandum.  Likewise, the Bureau of Prisons requests that the Court hold a hearing in this matter.

April 9, 2007                          Respectfully submitted,

                                       /s/  V. A. Taylor (by RC)
                                       _____
                                       JEFFREY A. TAYLOR, D.C. Bar # 498610
                                       United States Attorney

                                       /s/
                                       _____
                                       RUDOLPH CONTRERAS, DC BAR #434122
                                       Assistant United States Attorney

                                       /s/
                                       _____
                                       JOHN F. HENAULT, D.C. Bar # 472590
                                       Assistant United States Attorney
                                       555 4th Street, N.W.
                                       Washington, DC 20530
                                       (202) 307-1249
                                       (202) 514-8780 (facsimile)

9

## CERTIFICATE OF SERVICE

On April 9, 2007, a true and correct copy of the foregoing was served by facsimile and electronic mail, by agreement of counsel and in lieu of hand delivery, on Morgan Frankel, Assistant Legal Counsel for the United States Senate. The facsimile copy was set to (202) 224-3391, and the electronic copy was delivered to Morgan_Frankel@legal.senate.gov.

John F. Henault
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the Application of            :
                                               :
COMMITTEE ON FINANCE                           :
WASHINGTON, D.C. 20510                         :            MISC. NO. 07-134
                                               :
For A Writ of Habeas Corpus                    :
Ad Testificandum                               :

## APPLICATION FOR WRIT OF HABEAS
## CORPUS AD TESTIFICANDUM

The United States Senate Committee on Finance, by and through its undersigned counsel, respectfully moves this Honorable Court to issue a Writ of Habeas Corpus Ad Testificandum, and in support thereof states as follows:

(1)  The Committee on Finance (Committee) has reason to believe that Evangelos Dimitrios Soukas has material and necessary information relevant to an authorized investigation presently being conducted by that Committee;

(2)  Evangelos Dimitrios Soukas is a prisoner in the custody of the United States Marshals Service for the Central District of California and is currently being housed in the Victorville Medium II Federal Correctional Institution, 13777 Air Expressway Boulevard, Victorville, CA  92394, Inmate #35211-086;

(3)  Evangelos Dimitrios Soukas is a necessary witness at hearings before the Committee on Finance currently scheduled for April 12, 2007;

(4) In order to prepare for the hearing, it is necessary for the staff of the Committee on Finance to interrogate Evangelos Dimitrios Soukas in Room 215 of the Dirksen Senate Office Building, Washington, D.C. or such other location as may be designated by said Committee, in advance of the hearing on April 11, 2007 at 12:00 noon; and

(5) The presence of said Evangelos Dimitrios Soukas will be required April 11, 2007 at 12:00 noon and on April 12, 2007 at 9:00 a.m.

WHEREFORE, the Committee on Finance hereby requests that this Court issue a Writ of Habeas Corpus Ad Testificandum directed to the Honorable John F. Clark, Director, United States Marshals Service, 600 Army-Navy Drive, Arlington, Virginia, 22202 and Adam M. Torres, United States Marshall for Central District of California, 312 N. Spring Street, Room G-23, Los Angeles, CA 90012, ordering the production of Evangelos Dimitrios Soukas before the Committee on Finance, in accordance herewith, to be interrogated by the staff of the Committee and to testify at a hearing until said Committee no longer requires the presence of said person.

Respectfully submitted,

Kolan Davis
Republican Chief Counsel
Committee on Finance
215 Dirksen Senate Office Building
Washington, DC 20510

William Wynne, DC Bar # 494124
Tax Counsel
Committee on Finance
215 Senate Dirksen Office Building
Washington, DC 20510

Apr-05-07  04:33pm  From-Committee on Finance Republican          +2022281703    T-062  P 002/005  F-944

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

APR 4  2007

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

MISC. NO. 07-134

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

### PRESIDENT OF THE UNITED STATES OF AMERICA

TO:    John F. Clark                           Adam N. Torres
       Director                                United States Marshal
       United States Marshals Service          Central Judicial District of California
       600 Army-Navy Drive                     312 N. Spring Street, Room G-23
       Arlington, Virginia 22202               Los Angeles, CA 92394
                                               (213) 894-6820

GREETING:

　　　You are hereby commanded to produce the body of Evangelos Dimitrios Soukas, under safe and secure conduct before the United States Senate Committee on Finance, Room 215 of the Dirksen Senate Office Building, Washington, D.C., or such other location as may be designated by the Committee through its counsel, on April 11, 2007 at 12:00 noon, so that said Evangelos Dimitrios Soukas may be interrogated by staff of the Committee and appear at a hearing on April 12, 2007 at 9:00 a.m.; and then, upon completion of said interrogation or until said Committee no longer requires his presence, said Evangelos Dimitrios Soukas is to be returned from whence he came and have then and there this writ.

SO ORDERED.

Dated this _4_ day of _April_ 2007

UNITED STATES DISTRICT JUDGE
DISTRICT OF COLUMBIA

---

### RETURN

EXECUTED, this writ in the above-captioned matter this ____ day of _____ 2007

UNITED STATES MARSHAL

Declaration of John M. Vanyur, Assistant Director of the Correctional Programs Division of the Federal Bureau of Prisons.

As the Assistant Director for the Correctional Programs Division, I direct the security, intelligence, case management, mental health programs, religious services, community programs, inmate designations and sentence computation for the Federal Bureau of Prisons (today there are 114 federal prisons and more than 196,500 inmates). During my 26-year career with the United States Department of Justice, I have held a variety of leadership positions including: Warden of the Federal Detention Center in Philadelphia, Pennsylvania; Warden of the Low Security Correctional Institution in Butner, North Carolina; Deputy Assistant Director for Human Resources; BOP Personnel Director; and Associate Warden of the Administrative Maximum Penitentiary in Florence, Colorado.

I have significant security concerns with making inmate Evangelos Dimitrios Soukas, Register number 35211-086, available to testify before the Senate Finance Committee on April 12, 2007. The hearing, which I understand will be comprised of a single panel that would include several high ranking government officials such as the Commissioner of the Internal Revenue Service and the Assistant Attorney General for the Tax Division, is expected to be televised on C-Span.

Inmate Soukas has been committed to the custody of the Federal Bureau of Prisons to serve a term of imprisonment. Presently Mr. Soukas is housed at the Federal Transfer Center, Oklahoma City (FTC) a facility owned and operated by the Federal Bureau of Prisons. Mr. Soukas was transported to FTC Oklahoma from his designated facility, the Federal Correctional Institution (FCI) Victorville, California by the United States Marshals Service.

Inmate Soukas is serving a sentence of more than 8 years and is classified as medium security due to the nature of the offense (involved a loss of more than $1 million) and a criminal history that includes serious offenses. Based on my more than 26 years of experience in corrections, I believe that allowing inmate Soukas to testify will create security concerns at the institution to which he will return (FCI Victorville). My concern is based on one of the fundamental principles in managing safe and secure correctional institutions: to the greatest extent possible, inmates should have a similar status; none should be allowed to have elevated status over the others. This is because with elevated status comes a sense of power for the inmate. This power allows the inmate to take advantage of, direct and/or manipulate other inmates, thereby creating a dangerous environment for staff and inmates. Additionally, after a time other inmates begin to resent the inmate with the elevated status and he or she becomes a target, creating another dangerous situation for staff and inmates.

The concern described above has been critical to many of the decisions made over the past few years to deny requests to interview inmates on national television. While each interview request must be considered by the warden of the facility where the inmate is housed, and may be denied based on specific security concerns present in that case, very often the concerns relate to the inmate gaining elevated status as a result of appearing on television. In some instances the concerns relate more directly to the inmate describing behaviors that other inmates would find offensive and would make the interviewee a target among the inmate population.

Allowing inmate Soukas to appear on national television, testifying before a Senate committee alongside high level government officials poses safety and security concerns for the BOP.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 9, 2007.

John Vanyur
Assistant Director, Correctional Programs Division
Federal Bureau of Prisons

COMMITTEE ON FINANCE

I. RULES OF PROCEDURE

(Adopted January 17, 2007)

Rule 1. *Regular Meeting Days.*—The regular meeting day of the committee shall be the second and fourth Tuesday of each month, except that if there be no business before the committee the regular meeting shall be omitted.

Rule 2. *Committee Meetings.*—(a) Except as provided by paragraph 3 of Rule XXVI of the Standing Rules of the Senate (relating to special meetings called by a majority of the committee) and subsection (b) of this rule, committee meetings, for the conduct of business, for the purpose of holding hearings, or for any other purpose, shall be called by the chairman after consultation with the ranking minority member. Members will be notified of committee meetings at least 48 hours in advance, unless the chairman determines that an emergency situation requires a meeting on shorter notice. The notification will include a written agenda together with materials prepared by the staff relating to that agenda. After the agenda for a committee meeting is published and distributed, no nongermane items may be brought up during that meeting unless at least two-thirds of the members present agree to consider those items.

(b) In the absence of the chairman, meetings of the committee may be called by the ranking majority member of the committee

1

who is present, provided authority to call meetings has been delegated to such member by the chairman.

Rule 3. *Presiding Officer.*—(a) The chairman shall preside at all meetings and hearings of the committee except that in his absence the ranking majority member who is present at the meeting shall preside.

(b) Notwithstanding the rule prescribed by subsection (a) any member of the committee may preside over the conduct of a hearing.

Rule 4. *Quorums.*—(a) Except as provided in subsection (b) one-third of the membership of the committee, including not less than one member of the majority party and one member of the minority party, shall constitute a quorum for the conduct of business.

(b) Notwithstanding the rule prescribed by subsection (a), one member shall constitute a quorum for the purpose of conducting a hearing.

Rule 5. *Reporting of Measures or Recommendations.*—No measure or recommendation shall be reported from the committee unless a majority of the committee is actually present and a majority of those present concur.

Rule 6. *Proxy Voting; Polling.*—(a) Except as provided by paragraph 7(a)(3) of Rule XXVI of the Standing Rules of the Senate (relating to limitation on use of proxy voting to report a measure or matter), members who are unable to be present may have their vote recorded by proxy.

(b) At the discretion of the committee, members who are unable to be present and whose vote has not been cast by proxy may be polled for the purpose of recording their vote on any rollcall taken by the committee.

Rule 7. *Order of Motions.*—When several motions are before the committee dealing

2

with related or overlapping matters, the chairman may specify the order in which the motions shall be voted upon.

Rule 8. *Bringing a Matter to a Vote.*—If the chairman determines that a motion or amendment has been adequately debated, he may call for a vote on such motion or amendment, and the vote shall then be taken, unless the committee votes to continue debate on such motion or amendment, as the case may be. The vote on a motion to continue debate on any motion or amendment shall be taken without debate.

Rule 9. *Public Announcement of Committee Votes.*—Pursuant to paragraph 7(b) of Rule XXVI of the Standing Rules of the Senate (relating to public announcement of votes), the results of rollcall votes taken by the committee on any measure (or amendment thereto) or matter shall be announced publicly not later than the day on which such measure or matter is ordered reported from the committee.

Rule 10. *Subpoenas.*—Witnesses and memoranda, documents, and records may be subpoenaed by the chairman of the committee with the agreement of the ranking minority member or by a majority vote of the committee. Subpoenas for attendance of witnesses and the production of memoranda, documents, and records shall be issued by the chairman, or by any other member of the committee designated by him.

Rule 11. *Nominations.*—In considering a nomination, the Committee may conduct an investigation or review of the nominee's experience, qualifications, and suitability, to serve in the position to which he or she has been nominated. To aid in such investigation or review, each nominee may be required to submit a sworn detailed statement including bio-

3

graphical, financial, policy, and other information which the Committee may request. The Committee may specify which items in such statement are to be received on a confidential basis. Witnesses called to testify on the nomination may be required to testify under oath.

Rule 12. *Open Committee Hearings.*—To the extent required by paragraph 5 of Rule XXVI of the Standing Rules of the Senate (relating to limitations on open hearings), each hearing conducted by the committee shall be open to the public.

Rule 13. *Announcement of Hearings.*—The committee shall undertake consistent with the provisions of paragraph 4(a) of Rule XXVI of the Standing Rules of the Senate (relating to public notice of committee hearings) to issue public announcements of hearings it intends to hold at least one week prior to the commencement of such hearings.

Rule 14. *Witnesses at Hearings.*—(a) Each witness who is scheduled to testify at any hearing must submit his written testimony to the staff director not later than noon of the business day immediately before the last business day preceding the day on which he is scheduled to appear. Such written testimony shall be accompanied by a brief summary of the principal points covered in the written testimony. Having submitted his written testimony, the witness shall be allowed not more than ten minutes for oral presentation of his statement.

(b) Witnesses may not read their entire written testimony, but must confine their oral presentation to a summarization of their arguments.

(c) Witnesses shall observe proper standards of dignity, decorum and propriety while presenting their views to the committee. Any

4

witness who violates this rule shall be dismissed, and his testimony (both oral and written) shall not appear in the record of the hearing.

(d) In scheduling witnesses for hearings, the staff shall attempt to schedule witnesses so as to attain a balance of views early in the hearings. Every member of the committee may designate witnesses who will appear before the committee to testify. To the extent that a witness designated by a member cannot be scheduled to testify during the time set aside for the hearing, a special time will be set aside for the witness to testify if the member designating that witness is available at that time to chair the hearing.

Rule 15. *Audiences.*—Persons admitted into the audience for open hearings of the committee shall conduct themselves with the dignity, decorum, courtesy and propriety traditionally observed by the Senate. Demonstrations of approval or disapproval of any statement or act by any member or witness are not allowed. Persons creating confusion or distractions or otherwise disrupting the orderly proceeding of the hearing shall be expelled from the hearing.

Rule 16. *Broadcasting of Hearings.*— (a) Broadcasting of open hearings by television or radio coverage shall be allowed upon approval by the chairman of a request filed with the staff director not later than noon of the day before the day on which such coverage is desired.

(b) If such approval is granted, broadcasting coverage of the hearing shall be conducted unobtrusively and in accordance with the standards of dignity, propriety, courtesy and decorum traditionally observed by the Senate.

5

(c) Equipment necessary for coverage by television and radio media shall not be installed in, or removed from, the hearing room while the committee is in session.

(d) Additional lighting may be installed in the hearing room by the media in order to raise the ambient lighting level to the lowest level necessary to provide adequate television coverage of the hearing at the then current state of the art of television coverage.

(e) The additional lighting authorized by subsection (d) of this rule shall not be directed into the eyes of any members of the committee or of any witness, and at the request of any such member or witness, offending lighting shall be extinguished.

(f) No witness shall be required to be photographed at any hearing or to give testimony while the broadcasting (or coverage) of that hearing is being conducted. At the request of any such witness who does not wish to be subjected to radio or television coverage, all equipment used for coverage shall be turned off.

Rule 17. *Subcommittees.*—(a) The chairman, subject to the approval of the committee, shall appoint legislative subcommittees. The ranking minority member shall recommend to the chairman appointment of minority members to the subcommittees. All legislation shall be kept on the full committee calendar unless a majority of the members present and voting agree to refer specific legislation to an appropriate subcommittee.

(b) The chairman may limit the period during which House-passed legislation referred to a subcommittee under paragraph (a) will remain in that subcommittee. At the end of that period, the legislation will be restored to the full committee calendar. The period referred to in the preceding sentences should be

6

6 weeks, but may be extended in the event that adjournment or a long recess is imminent.

(c) All decisions of the chairman are subject to approval or modification by a majority vote of the committee.

(d) The full committee may at any time by majority vote of those members present discharge a subcommittee from further consideration of a specific piece of legislation.

(e) Because the Senate is constitutionally prohibited from passing revenue legislation originating in the Senate, subcommittees may mark up legislation originating in the Senate and referred to them under Rule 16(a) to develop specific proposals for full committee consideration but may not report such legislation to the full committee. The preceding sentence does not apply to nonrevenue legislation originating in the Senate.

(f) The chairman and ranking minority members shall serve as nonvoting *ex officio* members of the subcommittees on which they do not serve as voting members.

(g) Any member of the committee may attend hearings held by any subcommittee and question witnesses testifying before that subcommittee.

(h) Subcommittee meeting times shall be coordinated by the staff director to insure that—

(1) no subcommittee meeting will be held when the committee is in executive session, except by unanimous consent;

(2) no more than one subcommittee will meet when the full committee is holding hearings; and

(3) not more than two subcommittees will meet at the same time.

Notwithstanding paragraphs (2) and (3), a subcommittee may meet when the full com-

7

mittee is holding hearings and two sub-committees may meet at the same time only upon the approval of the chairman and the ranking minority member of the committee and subcommittees involved.

(i) All nominations shall be considered by the full committee.

(j) The chairman will attempt to schedule reasonably frequent meetings of the full committee to permit consideration of legislation reported favorably to the committee by the subcommittees.

Rule 18. *Transcripts of Committee Meetings.*—An accurate record shall be kept of all markups of the committee, whether they be open or closed to the public. This record, marked as "uncorrected," shall be available for inspection by Members of the Senate, or members of the committee together with their staffs, at any time. This record shall not be published or made public in any way except:

(a) By majority vote of the committee after all members of the committee have had a reasonable opportunity to correct their remarks for grammatical errors or to accurately reflect statements made.

(b) Any member may release his own remarks made in any markup of the committee provided that every member or witness whose remarks are contained in the released portion is given a reasonable opportunity before release to correct their remarks.

Notwithstanding the above, in the case of the record of an executive session of the committee that is closed to the public pursuant to Rule XXVI of the Standing Rules of the Senate, the record shall not be published or made public in any way except by majority vote of the committee after all members of the committee have had a reasonable opportunity to

8

correct their remarks for grammatical errors or to accurately reflect statements made.

Rule 19. *Amendment of Rules.*—The foregoing rules may be added to, modified, amended or suspended at any time.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Application of | ) |
| | ) |
| COMMITTEE ON FINANCE | ) Misc. No: 07-0134 (TFH) |
| WASHINGTON, D.C. 20510 | ) |
| | ) |
| For a Writ of Habeas Corpus | ) |
| Ad Testificandum. | ) |
| _____ | ) |

### ORDER

This matter comes before the Court on the motion to quash the writ of habeas corpus ad

testificandum. Upon consideration of the relevant pleadings, applicable law, and the record

herein, it is, this ___ day of April, 2007, hereby,

ORDERED, that the writ of habeas corpus ad testificandum issued by this Court on April

4, is hereby QUASHED.

_____
United States District Judge