UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


```
In Re:                          .  MC No. 07-0134
EVANGELOS DIMITRIOS SOUKAS      .  Washington, D.C.
                                .  Tuesday, April 10, 2007
. . . . . . . . . . . . . . . . .  3:25 p.m.
```



TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE THOMAS F. HOGAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
For the Federal            JOHN F. HENAULT, JR., ESQ.
Bureau of Prisons:         U.S. Attorney's Office
                           555 Fourth Street, NW
                           Washington, D.C. 20530
                           202-307-1249


For the Senate             MORGAN J. FRANKEL, ESQ.
Committee on Finance:      Office of Senate Legal Counsel
                           United States Senate
                           642 Hart Senate Office Building
                           Washington, D.C. 20510-7250
                           202-224-4435


Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           Official Court Reporter
                           U.S. Courthouse, Room 6812
                           333 Constitution Avenue, NW
                           Washington, D.C. 20001
                           202-354-3186
```



Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1                    P R O C E E D I N G S

2          THE COURT:  Hello, counsel.  Judge Hogan.

3          MR. HENAULT:  Good afternoon.

4          THE COURT:  All right.  Would you identify yourselves

5    for the record, please.  I have a reporter present.

6          MR. HENAULT:  Yes.  Good afternoon, Chief Judge Hogan.

7    This is John Henault with the United States Attorney's Office on

8    behalf of the Bureau of Prisons.

9          MR. FRANKEL:  And this is Morgan Frankel, the Senate

10   legal counsel.  I'm here on behalf of the Senate Committee on

11   Finance.

12         THE COURT:  All right.  I'm going to have my clerk of

13   the court call the case, and then we'll go ahead with the

14   argument.

15         THE DEPUTY CLERK:  Your Honor, this is in the matter

16   of the application of the Committee of Finance for a writ of

17   *habeas corpus ad testificandum*, Miscellaneous No. 07-134.

18         THE COURT:  All right.  Thank you.

19      This matter is being recorded by the court reporter because

20   this matter is public and will be available if needed, the

21   transcript of this hearing.

22      The background of what brings the emergency motion to quash

23   filed by the Bureau of Prisons, through their representatives

24   here at the U.S. Attorney's Office, was a writ of *habeas corpus*

25   to bring a witness in to testify on Wednesday, April 11, which

1    was directed, the writ, originally to the Marshals Service that

2    the Court signed on the request of the Senate Committee on

3    Finance yesterday.

4         Let's see, the emergency motion to quash I think was

5    actually filed yesterday morning, brought it in the evening

6    before, but was on the record yesterday morning.  And then the

7    opposition was received this morning, I believe, and then the

8    reply a few minutes ago by the government.  So it's at issue.

9         And the government has moved to quash the writ.  Apparently

10   the individual to be brought to testify to the Senate, transport

11   from the California prison was stopped by the order of Bureau of

12   Prisons, although they had no order from the Court to do so, and

13   the prisoner is being held now temporarily in Oklahoma.

14        The Court will note it's somewhat taken aback that the

15   Bureau of Prisons took it upon themselves, without authority

16   from the Court, to block a court order.

17        In any event, let me ask the government a few questions,

18   and I'll ask the Senate a few questions.  The government's

19   objection is the writ first be directed to the entity that's

20   holding custody of the prisoner sought, and that maybe 40 or 50

21   years of practice that the Senate has filed in their opposition

22   of issuing such writs, some of which have gone to the courts of

23   appeal and not been challenged before, does not -- the history

24   does not change the ruling, particularly relying upon the

25   Supreme Court case of *Pennsylvania Bureau of Corrections v. The*

1    *Marshals Service*, that a writ has to be directed to the person

2    having control or custody over the individual.

3        Let me ask the government this, whether the history has any

4    meaning or not, but secondly, whether or not the amended writ

5    now attached to the pleading, the opposition by the Senate, if

6    the Court issued that today, that would cure this defect that

7    you've claimed exists; is that correct?

8        MR. HENAULT:  Yes, Your Honor.  First let me start

9    with your last question.  I do not believe that even if the

10   Court were to issue the amended writ that the committee has

11   proposed, that would not cure the deficiencies, Your Honor,

12   because the primary reason that the instant writ is faulty and

13   should be quashed is the express language of the statute

14   authorizing such a writ.

15       THE COURT:  All right.  That's a different question.

16   I was just addressing the first question.  If the writ --

17   assuming for a minute they have the power to issue writs out of

18   the Senate under the statute and under the Senate rules, if the

19   amended writ was issued, would that not cure the issue?  If they

20   did name the person who had control over the body.

21       MR. HENAULT:  That could cure it, Your Honor.

22       THE COURT:  All right.  Now, the second argument is,

23   the writ's unavailable to compel testimony before Congress.  And

24   obviously the Senate pointed to *United States v. Liddy,* a

25   Watergate case, where the Court of Appeals noted that the

```
 1    defendant was "validly summoned by the authority of the
 2    subcommittee pursuant to a writ of habeas corpus ad testificandum
 3    granted by Chief Judge Sirica of this court on July 16, 1973."
 4    Perhaps that wasn't argued they didn't have jurisdiction, but
 5    the Court of Appeals assumed they did by stating that, apparently.
 6         Let me ask you, when you parse the statute, why under --
 7    and we're talking about Section 2241, Title 28, why under (c)(1)
 8    and (c)(2) they would not have the power if the rules of the
 9    Senate allow them to do this?
10              MR. HENAULT:  Your Honor, every court that has
11    addressed this issue has expressly held that the authority for a
12    district court to issue the writ of habeas corpus ad
13    testificandum derives solely from 2241, Section (c)(5).
14    That's every single court that has addressed this issue.
15              THE COURT:  Right.  Those are courts addressing the
16    issue about coming to testify in court.
17              MR. HENAULT:  Correct.
18              THE COURT:  Not coming to testify for a Senate
19    hearing.
20              MR. HENAULT:  Your Honor, the Ford v. Allen, 11th
21    Circuit, 728 F.2d 1369, in its quotation of where the legal
22    authority for a writ of habeas corpus ad testificandum, without
23    mentioning testifying in court, directed the parties to 28
24    U.S.C. 2241(c)(5), and of all the sections, the other sections
25    in 2241(c), not a single section addresses any sort of
```

1    testimony, which is the sole purpose of the sort of writ at

2    issue here.

3         THE COURT:  All right.  So that if the Senate wanted

4    to subpoena -- not subpoena is the right word, the Senate wanted

5    to bring before them a prisoner in custody who could not respond

6    to a subpoena since they're in custody and have no freedom to

7    travel, there's no way, you're saying, under the law today they

8    could do that.

9         MR. HENAULT:  Your Honor, I think there are many ways

10   that the Senate can work out with the Bureau of Prisons to have

11   inmates testify.  Our position is that this sort of writ is

12   certainly not the appropriate way to do so.

13        THE COURT:  So in all these years, when they've been

14   responding to writs, it's been by largess of the Bureau of

15   Prisons, not because the Senate had the power to do so?

16        MR. HENAULT:  It has been a courtesy, Your Honor.

17        THE COURT:  So if there was a disagreement with the

18   Bureau of Prisons on bringing a prisoner the Senate felt was

19   absolutely necessary for their investigation of some matter,

20   they have no power to bring them before the Senate?

21        MR. HENAULT:  That's correct, Your Honor, not with the

22   sort of writ at issue here.  And I would also note that the

23   factors required even for the Court to exercise its discretion

24   to issue this sort of writ were absent from the moving papers.

25        THE COURT:  All right.  Let me move to the -- you had

1    one other thing.  I think also, besides the absence of the

2    moving papers, you had raised a third objection on the

3    committee's rules governing subpoenas?

4            MR. HENAULT:  That's correct, Your Honor.

5            THE COURT:  Although this is not a subpoena, but you

6    felt that the reading of the rules, the Senate committee rules

7    means that they can only compel testimony by subpoena, which

8    gets back to what I was just talking about then, they could not

9    do it by writ.  Now, that rule the way you quoted it is

10   permissive.  It says witnesses may be subpoenaed.

11           MR. HENAULT:  That is correct, Your Honor.

12           THE COURT:  It doesn't say only can be subpoenaed.

13           MR. HENAULT:  That's correct, Your Honor.  But the

14   rule on the authority of the Congressional committee to bring

15   witnesses before it is silent on the ability to seek a writ.

16           THE COURT:  Right.  Okay.  All right, thank you.  Let

17   me talk with Mr. Frankel, then, for a few minutes.  Mr. Frankel,

18   do you agree that this was not addressed to the person who had

19   the custody, this writ, of the prisoner at the time it was

20   issued?

21           MR. FRANKEL:  I certainly agree it would have been

22   preferable to have the warden on it.  I note that it is

23   addressed to the President of the United States, as they are

24   typically, who is the supervisory authority of the Attorney

25   General, and that the Federal Bureau of Prisons and the

1    United States Marshals Service are both part of the Department

2    of Justice.

3         They've been done both ways in the past.  Numbers of writs

4    have been issued out of Your Honor's court with a prison warden

5    and without.  And an objection has never been raised by the

6    Department of Justice or the Bureau of Prisons.  Indeed, this

7    prisoner was transported, it's my understanding, from the Bureau

8    of Prisons facility with, I assume, approval of the warden, to

9    another facility by the marshals without objection, and stopped

10   in Oklahoma City.

11        Having said all of that, I think it would have been better

12   practice and is better practice to direct a writ -- and we take

13   responsibility for not having advised the Court of this -- to

14   the warden at the facility, which now would not be, I gather,

15   Victorville but would be Oklahoma City, and that's why we

16   proffered an amended writ to cure the issue, and we would

17   endeavor to have committees get --

18             THE COURT:  That's fine.  That's a technical issue

19   that I think can be overcome.  Let's look at the other issues,

20   the substantive issues.  One, the argument that the section of

21   the statute we've just referred to, Title 28, 2241, does not

22   provide for writs of *habeas corpus ad testificandum* for any

23   other use except under (5), to come to court to testify or for

24   trial.  And the Justice Department's reading that as into court,

25   not to the Senate.

1        So there's no authority, even with what the practice has

2    been, because it's never been challenged before, but they're

3    saying no matter that they used to agree, that they now have

4    taken the position there's no authority to issue these writs now

5    because of that language.  And then secondly, that the Senate

6    rules do not provide for it in any event.

7            MR. FRANKEL:  Well, starting with the statutory point,

8    the government began with the argument that this is a plain text

9    case, and we agree with that, and the plain text does not say

10   what the U.S. Attorney's Office says it says.  It provides five

11   alternatives, neither (c)(5), which is what's used to bring

12   witnesses into court, nor in the cases that we've been able to

13   look at that they cite in their reply say that its exclusive way

14   of bringing testimony -- a prisoner to testify in any kind of

15   proceeding.

16       This is a codification traced from the Judiciary Act of

17   1789 incorporating prior common law, and there are a variety of

18   variants of writs of *habeas corpus*, and it's an ancient writ and

19   it's recognized in England.  We cite for authority 2241(a),

20   which is the generic authority, and then (c)(1), which limits it

21   to, in that provision, to people of custody under or by color of

22   the authority of the United States.  Doesn't say it's only for

23   the great writ or it's for one of the other variants.

24       So from plain text, there's nothing that makes (c)(5)

25   exclusive.  Obviously, where it applies it's more specific and

1    courts have cited it.  We think it may be the only authority to

2    bring state prisoners to testify.  So some of the cases the

3    government cites are making that point, and that's got to be

4    right.

5         In a case like this, where the plain text is permissive, as

6    it is, and the history is 50 years of unquestioned use of this

7    by -- I don't know if it's every chief judge in the past 50

8    years, but most of them and most of the other judges, many of

9    them have sat on your court, and the Department of Justice has

10   never raised this argument, they've never said that we were

11   seeking an advisory opinion, that once they got the writ they

12   could throw it away if they wanted to, that judges were being

13   put through a meaningless exercise, and that Congress hears from

14   witnesses at the sufferance of the Bureau of Prisons.

15        None of those arguments have ever been made, we've never

16   heard word of those.  And the Bureau of Prisons of course has

17   been aware of, and the Department of Justice, of each of these,

18   because they have custody over -- those that are federal, over

19   the federal prisoners.

20        So I don't believe this was an inchoate argument waiting to

21   be made.  I believe this is a new view and one that simply is

22   inconsistent with the statute and with the historical gloss that

23   doesn't contradict the statute but fulfills its scope and its

24   meaning.

25             THE COURT:  All right.  Let me ask the government a

1    little follow-up question.

2         MR. FRANKEL:  Did you want me to address the Senate

3    rule issue?

4         THE COURT:  All right.  Address that and I'll get to

5    the government again, another question.

6         MR. FRANKEL:  No committee in its rules have

7    procedures to apply for writs.  The standing rules of the Senate

8    which govern the Finance Committee and the other standing

9    committees authorize all committees to require by subpoena or

10   otherwise the attendance of such witnesses and the production of

11   such documents as are necessary and authorized under their

12   jurisdiction.

13        The Judiciary Committee authorizes subpoenas by concurrence

14   of the chair and ranking member.  As Your Honor pointed out,

15   this witness cannot respond by subpoena, it cannot produce

16   itself, so the same procedure was followed, the chair and

17   ranking member agreed to summon the witness, and the staff

18   counsel prepared and filed the papers.

19        This is the procedure that in my experience has been used

20   by every committee in the long history, or at least in the

21   practice I'm familiar with, which is the last 25 years of the

22   history recited in our attachments.  And the idea that it's up

23   to the Bureau of Prisons to tell the committee you must put in

24   your rules a way to apply for writs we think is a stretch.

25        I'd also point out that as of this morning our office was

1    directed by the United States Senate, by floor action and

2    passage of a resolution, to represent the committee in this

3    proceeding, to secure the attendance of this witness if

4    possible.  And therefore, if there were any question about the

5    authority of the committee to pursue the amended writ, we think

6    that action by the Senate makes that abundantly clear.

7           THE COURT:  All right.  Thank you.  Just to begin, I

8    had quoted a thing from *United States v. Liddy*.  I said Court of

9    Appeals, I think.  I think that was Judge Pratt actually in the

10   district court that held the defendant was validly summoned by

11   the authority of the subcommittee pursuant to the writ granted

12   by Chief Judge Sirica.  Another district judge held that.

13      Let me go back to the government for a minute.  Is it your

14   position I can tell the Senate how it should read its rules and

15   how they should be applied, where they have the authority, as he

16   had just indicated, the Senate counsel had just indicated that

17   they can subpoena or otherwise have the attendance of a witness

18   to testify?  And I can interpret the Senate rules saying it

19   doesn't have the word "writ" in it so they have no power to do

20   that from their own rules?  I'm not talking about the 28 U.S.C.

21   statute.

22          MR. HENAULT:  Your Honor, if the authority of the

23   subcommittee to summon witnesses arises from their rules, and

24   the rules do not authorize the particular method by which they

25   are seeking to summon this person, then the plain language of

1        the rule would thereby invalidate the application.

2            It's not necessarily that the Court would be telling them

3        how they can do what they need to do, it's the Court telling the

4        committee that you must follow your own rules.

5                THE COURT:  And I'm not sure I follow that.  I don't

6        understand how, if they have a rule saying they have authority

7        to bring people before the committee to testify in the manner

8        they deem appropriate, how that wouldn't encompass a writ if a

9        writ is available.

10               MR. HENAULT:  The rule for this committee, Your Honor,

11       does not authorize the committee to bring witnesses by whatever

12       means it deems necessary.

13               THE COURT:  All right.  Let me go back with you for a

14       minute as to this lack of power in 28 U.S.C. 2241 for the writ

15       of *habeas corpus* to be brought before a Senate, or let us say a

16       legislative body, for a prisoner to testify if they need to have

17       them testify.  As I understand it, and I don't know if I'm

18       correct, I just want to see if you have any history of this.  I

19       know you've only been in the case for a couple of days.

20           There is no history that I know of of ever having

21       previously, in the 50 years at least the Senate's been able to

22       dredge up, in the half a century, any challenge previously to a

23       writ being issued to the Bureau of Prisons of bringing a

24       prisoner for testimony before a Senate or House committee.

25               MR. HENAULT:  Your Honor, I have found no cases where

1   this issue has been addressed.  Your Honor, if I may, one thing

2   that counsel for the committee brought up with regard to Section

3   2241(a), as I stated initially, that's not the section

4   applicable to this sort of writ, but (a) would further be

5   inapplicable because it authorizes the Court to issue the writs

6   within their respective jurisdictions.

7           THE COURT:  All right.  Let me look at 2241(c)(1) or

8   (c)(2).  Now, I understand your argument that it doesn't say the

9   word "testify" in it, but it does authorize, the way I read it,

10  that a writ extends to a prisoner if he's in custody under or by

11  color of the authority of the United States.  That's (1).

12          MR. HENAULT:  That's correct, Your Honor.

13          THE COURT:  Or (2), he's in custody for an act done or

14  committed or omitted in the pursuance of an act of Congress or

15  an order of process, judgment or decree of a court or a judge of

16  the United States, meaning that this defendant is in jail

17  because of a judgment by a court of the United States.

18      It seems to me then the writ of *habeas corpus* could extend

19  to him under that.  I agree it doesn't say that then he could be

20  brought for testimony before a Senate or House committee.  I'm

21  not sure why he's not covered under (1) or (2) of (c) of 2241.

22          MR. HENAULT:  Your Honor, those sections apply to the

23  typical writ of -- by their language, appear to me to apply to

24  the typical writ where someone would be challenging the

25  circumstances of his confinement or the duration of sentence and

1    those sort of challenges, not the specific writ at issue here

2    regarding testimony.

3              THE COURT:  Well, I agree.  It looks as if they were

4    generally meant to bring the body before someplace concerning

5    the reasons for their incarceration or challenge their

6    incarceration, although it doesn't limit it to that.  But I

7    think that is generally how it's understood.

8         Your *Ford* case is basically the same as the Supreme Court

9    case you cited, as I read it, the *Pennsylvania Bureau of*

10   *Corrections*.  That is, this is the marshals saying that they

11   don't bear the responsibility for responding to a *habeas*; it has

12   to be the individual or the body that actually has control of

13   the person, or the agency that has control of the person.  And

14   that's a Supreme Court case.  I don't see that again restricting

15   it only to (5) is the only way to bring somebody before the

16   court.

17        And the issue is really was there any authority to bring it

18   before a legislative body, a federal legislative body, whether

19   it be the Senate or the House.  I am concerned, because I would

20   think that if this was a problem, and I'm sure there have been

21   disputes before between the Justice Department and the Bureau of

22   Prisons and the federal legislative bodies about bringing

23   prisoners, that it has never been raised that the Senate or the

24   House never had authority under the law to ask for a writ of

25   *habeas corpus* for testimonial purposes because 2241 of Title 28

1   did not extend to them, if you only apply (5), because it says

2   into a court to testify or for a trial.

3       And that, it would seem to me, to be something that would

4   have been raised 50 years ago where there were disputes, and has

5   never been raised.  It doesn't mean it can't be raised now.  We

6   have the sentencing guidelines being in effect for 20 years

7   until somebody raised that they were unconstitutional and they

8   finally went out.  So it can be done.

9       But I am concerned about this.  I'm concerned about the

10  timing of it and the stopping of the prisoner in Oklahoma

11  without a court order to do so.  I'm not sure how that came

12  about.  Is the government aware how that happened?

13          MR. HENAULT:  Yes, Your Honor.  I'll address both

14  those issues.  The timing about it, Your Honor, the writ was

15  issued on the 4th.  In my conversations with personnel at the

16  Bureau of Prisons that are in the decision-making chain, I was

17  told they found out about this writ for the first time on the

18  morning of Friday, the 6th.

19      Our office was notified about it -- and that's the same

20  with the Department of Justice Office of Legislative Affairs,

21  have informed me that they learned about it on the late

22  afternoon of the 6th.  Our office was notified apparently around

23  the close of business on the 6th, and I was assigned the case

24  first thing Monday morning, and my first move was to call

25  chambers to alert chambers that a motion would be forthcoming.

1    That's the timing issue, Your Honor.

2         As far as the stopping the person in transit, the Bureau of

3    Prisons really did no such thing.  The marshals did take this

4    individual from FCI Victorville to the Federal Transport Center,

5    I believe it's called, in Oklahoma City.  At that time he was

6    remanded back to the custody of Bureau of Prisons.  So the

7    Bureau of Prisons did not take him -- tell the marshals, no, you

8    need to give him back to us.  The Marshals Service put him back

9    in the custody of Bureau of Prisons.

10        THE COURT:  All right.  My marshal gave me a little

11   bit different story, but that's neither here nor there at this

12   point.  But in any event, I was told they were ordered to leave

13   him there and not bring him any further.

14        MR. HENAULT:  Your Honor, I believe once he was

15   remanded to the Bureau of Prisons' custody, at FTC Oklahoma

16   City, the Marshals Service was advised that he was in the Bureau

17   of Prisons' custody and that he needed to stay there barring

18   order of the Court.

19        THE COURT:  Well, he had an order of Court, but to

20   bring him here.

21        MR. HENAULT:  An order to the Bureau of Prisons,

22   Your Honor.

23        THE COURT:  All right.  I think they took a lot on

24   themselves in ignoring a court order without authority to do so.

25        MR. HENAULT:  Your Honor, I would just say to that

1    that there was no court order directed to the Bureau of Prisons.

2         And as far as the assertion that this writ was addressed to

3    the President of the United States and thereby covering everyone

4    below him, the supervisory, the ultimate supervisory chain being

5    named --

6              THE COURT:  I agree with that.  I'm not going to --

7              MR. HENAULT:  All right.  I just wanted to make the

8    point that there was no writ to the Bureau of Prisons.

9              THE COURT:  All right.  I agree with that.  All right.

10   Well, I'm not sure -- the only substantive reason beyond the

11   jurisdictional one that I see raised is then as to the Bureau of

12   Prisons has alleged some concerns for his safety because he'd

13   become a star media witness and it would cause jealousy among

14   the other prisoners and put him in a threatening situation.

15        This is not unusual that prisoners are called by the Senate

16   or the House for investigatory purposes to testify.  Is there

17   something particular about this prisoner that makes him

18   different than other ones that have testified?

19             MR. HENAULT:  Your Honor, I will say I don't know the

20   specifics about the situation in Victorville.  I do know that

21   the Bureau of Prisons had asked and offered to the committee

22   that they would certainly permit him to testify by video from

23   Victorville, provided his face and identity were obscured to the

24   general public.

25        So there are some legitimate concerns on behalf of the

1    Bureau.  The specific concerns with this prisoner, I am not

2    aware of, Your Honor, other than those set forth in the

3    declaration.

4           THE COURT:  Right.  That's what I referred to.  Let me

5    ask the Senate counsel then, as to exposing this gentleman to TV

6    coverage and subjecting him to any difficulties because of that,

7    as I understand it, he has been previously interviewed in the

8    past privately, not publicly, and that you had substituted him

9    for another prisoner that you had wished to have that Justice

10   objected to.

11          MR. FRANKEL:  That's correct.

12          THE COURT:  What about his concerns raised by the

13   Bureau of Prisons now as to his safety if he testifies?

14          MR. FRANKEL:  Well, I would note that there's nothing

15   in the declaration or in the government's papers that say

16   anything about this prisoner in particular, that the focus of

17   the security concern would be applicable to any prisoner, that

18   they'd become elevated status by becoming a TV star or some such

19   thing.  And the government analogizes it to requests for press

20   interviews or TV interviews.

21       As the appendix, as you said, dredged up, shows, there have

22   been a variety of prisoners, from organized crime figures to

23   terrorism, finance people, to G. Gordon Liddy and E. Howard

24   Hunt.  They've not all been in public session with TV cameras,

25   but many of them are.  That is the way the Senate typically

1    conducts hearings.

2        This is a public hearing about tax compliance.  This is an

3    individual who, as I understand it, committed identity fraud and

4    filed for tax refunds in other people's names.  I don't see any

5    basis -- if the Bureau of Prisons were to prevail on the

6    security argument for this prisoner, I think that it would

7    establish a rule that the Bureau of Prisons, not the Senate or

8    House of Representatives, determines who testifies and under

9    what circumstances.  And that I don't think is consistent with

10   separation of powers or principles of comity.

11       The fact that -- and it was about a month ago that the

12   committee had contact with the Department of Justice and named a

13   different witness for this hearing, and the Department of

14   Justice came back and said there are still active

15   investigations, we'd rather you not call that witness, the

16   committee said fine, we'll look for somebody else, I think

17   demonstrates the committee's quite attentive to concerns.  And

18   that's why for 50 years I don't believe this problem has arisen

19   until now.

20       The committee then gave the Bureau of Prisons three names

21   of individuals two weeks ago, one of whom was this individual.

22   The Bureau of Prisons arranged for voluntary telephone

23   interviews twice to help determine whether this person would

24   make an effective witness.  At no time did the Bureau of Prisons

25   or the individuals at Victorville raise any concerns about the

1    status of this individual.

2         I think the fact that he's the subject of this litigation

3    probably elevates his status more than a mere appearance would

4    have.  And if there had been security concerns of the kind that

5    one would think of, particular to the witness, I think we would

6    have heard about it and the committee would have responded.

7         But at the last minute as part of an effort to show that

8    there is no writ applicable, and that the past 50 years has been

9    a charade, and that the Bureau of Prisons decides who testifies

10   before Congress, I don't think the committee's prepared, the day

11   before the writ was returnable, to start negotiating with the

12   Bureau of Prisons in altering its proceeding.

13        I don't know if it will be televised or not.  That's the

14   decision of C-SPAN and the networks.  Committee hearings are

15   open to the public and normally subject to television, and it's

16   certainly possible, but I don't understand what the concern is

17   in this case that hasn't arisen in the other 40 cases.  I think

18   we would have heard of it if it were a concern that involves

19   something about Victorville or something about Mr. Soukas.

20             MR. HENAULT:  Your Honor, if I may on the issue of the

21   identity and security issues.  Counsel for the committee named

22   G. Gordon Liddy, organized crime figures and terrorism prisoners

23   relating to that.  Those are all pretty notorious criminals who,

24   as I sit right here, I can't tell you the specifics of their

25   incarceration, but for notorious criminals there are typically

1    steps taken in the Bureau of Prisons to protect those

2    individuals and their security because of the fact, specifically

3    the fact that they are notorious and well known.  And here we

4    would be taking someone that may not be a notorious criminal and

5    making them notorious.

6            MR. FRANKEL:  Well, that's true of the other 30, the

7    ones I didn't name --

8            THE COURT:  All right.  That's fine.  We aren't

9    getting anywhere with that discussion now.  I think the real

10   issue comes down in the Court's mind to two things.  One is the

11   proper custodian of the person and how we address that; and

12   secondly, the challenge by the government that the committee

13   lacks the legal authority to request such a writ under 28 U.S.C.

14   2241.  And that their own rules do not provide for it, or that

15   the factors were not properly set forth in their application for

16   a writ.

17       I'm going to address the issues at this time, and this will

18   be a bench ruling by the Court because of the press of business.

19   The committee wishes the witness to appear tomorrow for

20   interviews -- no, it's today for interviews, so that's past, but

21   tomorrow for testimony.

22       I take it the hearing is still on for tomorrow?  It's two

23   days from now.

24           MR. FRANKEL:  It's supposed to be the interview today

25   and the hearing is Thursday.

1          THE COURT:  That's right.  It's April 11 for the

2     interview at noon, and testimony at 9:00 a.m. --

3          MR. FRANKEL:  And the committee indicated that if noon

4     ended up being impossible because of this proceeding, they're

5     flexible and will do it tomorrow night or late afternoon or at

6     any point that the Marshals Service were able to obtain the

7     prisoner's attendance.

8          THE COURT:  All right.  I'm going to make the

9     following ruling in this case.  As I said, it's a bench ruling

10    made without opportunity to go further back and write an

11    opinion, but this will be the opinion of the Court in any event.

12         The Court can do two things.  It's going to grant the

13    motion to quash the writ as originally issued for failure to

14    name the proper custodian of the person, that under *Pennsylvania*

15    *Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34, a

16    1985 case, it's clear that the Supreme Court held that they find

17    no evidence in the statute or its history that the common law

18    writ of *habeas corpus ad testificandum* suggested that the courts

19    are also empowered to cause third parties who are neither

20    custodians nor parties of litigation to bear the cost of

21    producing prisoners in federal court.

22         I think it's axiomatic that they are saying that a district

23    court cannot issue such a writ just because of extraordinary

24    circumstances, that they have to -- the writ has to go to

25    someone who has control or custody over the person, and the

1   President of the United States is far too removed to claim that

2   that's appropriate notice.

3       However, as to the second and third issue, the committee

4   lacks the legal authority to request such a writ, and the

5   factors necessary for the issuance of the writ are lacking, and

6   the rules are lacking in the Senate to compel a writ to be

7   issued, the Court is going to rule as follows:  It will allow

8   and will sign an amended writ of *habeas corpus ad testificandum*

9   directed to the warden of FTC Oklahoma and to related parties --

10   that is the Marshals Service and to the director of Bureau of

11   Prisons here -- to produce the individual under safe and secure

12   conduct for the United States Senate Committee starting tomorrow

13   as soon as possible, and to be held here through April 12, 2007,

14   to provide testimony as needed, and upon completion, when his

15   presence is no longer required, he'll be returned from whence he

16   came.

17       For these reasons, the Court, in looking at the history of

18   the operation of the practice of issuing writs for the obtaining

19   of witnesses who are in federal custody by the Senate and House,

20   finds that it has been clearly understood -- until now, at

21   least -- that Section 2241 of Title 28, *habeas corpus,* the power

22   to grant the writ, provided the district court's empowered to

23   order the proper custodian of the person to produce the person

24   through the Marshal's Office to the appropriate legislative body

25   and committee, operating under authority of that body who are

empowered to make inquiry and investigations as appropriate,
that that does empower the Court to order the writ, to have the
individual transported to provide information or testimony, as
the case may be -- it may be just information and interviews --
to the, as I said, appropriate authorized committee of the
Senate or the House.

If that is not so, then for the last 200-plus years, every
time the Senate and the House have requested a writ and it's
been issued, it's been done so without authority, if the
interpretation the government now asserts for the first time
that we can find is correct.  And that would mean that the
Senate and the House have lacked, since the beginning of this
country, the power to command witnesses to appear before it who
are already in custody.

They can't subpoena them, because they can't respond to a
subpoena, since they are not free to do so.  And the only way
that the Senate or the House can comply with their required
statutory duties and legislative affairs would be only as a
matter of comity between the executive branch and the
legislative branch, which certainly in these days does probably
not exist many times.

Therefore, the legislative branch, if the government is
correct in its application herein, would be powerless to
subpoena needed witnesses who are in custody, if that is a
correct interpretation that has not been discovered in the last

1    200 years as far as this Court is aware.

2         The reading, it seems to the Court, of 2241 includes

3    summonsing people by a writ for testimonial purposes who are in

4    custody or by color of the authority of the United States or in

5    custody pursuant to an order or judgment or decree of a court of

6    the United States to appear for whatever purposes.

7         I don't think because Section (5) of Subsection (c) says

8    it's necessary to bring him to court to testify means there's no

9    other way to bring him to some other agency to testify.  I don't

10   think you can read that into the statute.

11        Finally, the factors necessary for the issuance of the writ

12   under the rules of the Senate, as has at least been argued to

13   the Court today, that was not fully briefed, really, but it

14   seems to the Court if they have authority to subpoena or

15   otherwise to obtain the presence of the individual does not mean

16   they're foreclosed from issuing a writ because the rules of the

17   Senate do not say "writ."  I think it's up to the Senate to

18   interpret their rules, and the Court must have deference to how

19   they interpret their own internal rules of operation.

20        So for those reasons, the Court's going to grant the motion

21   to quash the writ as issued, issue a new writ at this time that

22   I'm signing at this time to direct the prisoner be brought here

23   immediately, and that I'm signing this 10th day of April, to be

24   here hopefully tomorrow so that he may be interrogated by the

25   staff of the committee and appear at a hearing on April 12,

1    2007, and then once his presence is no longer required, to be

2    returned from whence he came.

3        The writ is directed to the warden of FTC Transfer Center,

4    as well as to the director of Bureau of Prisons and to the

5    marshals, so that there's no question who has custody of this

6    individual.  And also inform the marshal at this time.

7        I'll enter an order to this effect as well so that if

8    there's an appeal that the government wishes to take, they'll

9    have an order from which to appeal.  I'll have the order in the

10   next few minutes.

11       All right.  Thank you, counsel.

12            MR. HENAULT:  Your Honor, if I may, at this time I

13   would request the Court stay that order to give the government

14   the opportunity to file an emergency appeal under the Seventh

15   Circuit case, *In the Matter of Hearings By the Committee on*

16   *Banking and Currency of the United States Senate* at 245 F.2d

17   667, and that's Seventh Circuit, 1957.

18       If this order is not stayed to allow an emergency appeal,

19   this matter would be deemed moot as soon as Inmate Soukas gets

20   here and the government would have no opportunity to appeal this

21   matter.

22            THE COURT:  Okay.  What about the Senate's position on

23   that?

24            MR. FRANKEL:  Well, I think that would completely

25   frustrate the Congress's ability to get the testimony.  I don't

1    think the basis for issuance of a stay has been demonstrated or

2    even made.  And in this case, were the person already in

3    Washington, perhaps there would be more time.  Today I was told

4    was supposed to be the travel day, and that has not happened, as

5    counsel has discussed.

6        And without a writ, there's no authority to release him, to

7    bring him here, and the writ called for and now calls for noon

8    tomorrow.  I don't think there's time for a stay without

9    essentially interfering with the proceedings of the committee,

10   and the deference that the Court referred to I think merits

11   continuing on with standard procedure.

12           THE COURT:  Well, I do think the government may wish

13   to get this on appeal and challenge the jurisdictional basis for

14   the issuance of the writ at the request of the Senate, and I

15   appreciate their concerns.  At the same time, on the mootness

16   argument he's arguing about, if he's brought here and testifies

17   I think it would be moot, but I think if he's on his way or has

18   not yet completed his mission, I'm not sure it's moot.

19       I'm going to deny the request for an immediate stay because

20   that would essentially grant the government's request to quash

21   at this time, when I've denied it, as to this -- in the sense

22   I've granted it and then granted the new writ I've issued.  And

23   I'm not going to stay the new writ.

24       So I'm going to issue the order and the government can note

25   its appeal and get an emergency hearing tomorrow morning from

1    the Court of Appeals if necessary.  All right.  Thank you,

2    counsel.

3              MR. HENAULT:  Thank you, Your Honor.

4              MR. FRANKEL:  Thank you, Your Honor.

5              THE COURT:  All right.

6         (Proceedings adjourned at 4:09 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*Bryan A. Wayne*

BRYAN A. WAYNE